**Marilyn HECK, Plaintiff,**

v.

**BOARD OF TRUSTEES, KENYON COLLEGE, et al., Defendants.**

**Nos. C–2–96–1050, C–2–97–1255.**

United States District Court,
S.D. Ohio,
Eastern Division.

June 17, 1998.

f. the Qualcomm reports in plaintiff's possession.

*Mattioli Affidavit,* ¶ 13.

732

Michael Garth Moore, Hilliard, OH, for plaintiff.

Richard S. Lovering, Bricker & Eckler, Columbus, OH, for defendants.

### OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.[1] Defendants move for summary judgment in both 96–1050 and 97–1255 on various grounds. In 96–1050, Heck brings two related discrimination claims under both the Age Discrimination in Employment Act ("ADEA") and the Employee Retirement In-

---

1. Because of the procedural posture of this case, the facts are common to both consolidated cases. For ease of citation, the Court will refer to *Heck v. Board of Trustees*, C–2–96–1050 as "96–1050" and will refer to *Heck v. Board of Trustees of Kenyon College*, C–2–97–1255 as "97–1255." In 97–1255, Heck sued the Board of Trustees of

come Security Act ("ERISA"). In 97–1255, Heck brings various state law claims relating to Defendants' alleged discrimination against her. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment. The Court **DISMISSES WITH PREJUDICE** 96–1050 in its entirety. The Court is without jurisdiction to hear 97–1255 and therefore **REMANDS** 97–1255 in its entirety to the Common Pleas Court of Knox County, with the exception noted below. In addition, the Court previously held in abeyance a decision on a portion of Defendants' motion to have requests for admission deemed admitted. The Court **DENIES** the remainder of that motion.

### I. FACTS

#### A. The Parties

Plaintiff Marilyn Heck is a seventy year old woman who worked at the Kenyon College Bookstore (the "Bookstore") from January of 1988 to June of 1995. Heck was employed by Kenyon College in a position at the Bookstore as an Assistant Bookkeeper. Defendant Jack Finefrock, manager of the Bookstore, oversaw the hiring of Heck. Defendant Joseph Nelson was the Vice–President of Kenyon College at all times relevant to this lawsuit.

#### B. Heck's Job

Heck began working in the Bookstore as an Assistant Bookkeeper on January 18, 1988. Although Finefrock apparently made the ultimate decision to hire Heck, he was not her immediate supervisor. Heck worked as an "at-will" employee for the Bookstore and was paid by the hour. At the time of her departure from Kenyon, the Bookstore paid her $8.09 per hour.

The majority of Heck's job involved data entry into a computer. In particular, Heck's job involved her entering invoices into the

Kenyon College, Jack Finefrock and Joseph Nelson. In 96–1050, Heck sued only the Board of Trustees of Kenyon College. However, the Court will use the term "Defendants" as including Finefrock, Nelson and the Board of Trustees, unless otherwise noted.

computer and then balancing the totals. Once she double-checked the entries to ensure that no errors had been made, Heck would forward the totals to the Computer Systems Department ("CSD"). CSD then printed the results. The results, when printed, were often long.

According to one of her supervisors, Heck had a problem with data entry. Problems arose with Heck's work because she allegedly would forward her data to CSD without adequately reviewing the entries. After forwarding the entries, Heck then would discover mistakes in the entries. Having found errors, Heck would attempt to correct the errors and re-send the results to CSD. Heck's methods caused confusion because CSD received several copies of the same audit and each copy of the audit would be marked as balanced. Thus, CSD had difficulty differentiating between the correct audit and those audits incorrectly marked as balanced.. In this way, Heck's corrections slowed down the accounting process as CSD would spend time examining which audit was properly balanced. In addition, the Bookstore accounts frequently had to be revised.

A member of CSD, Charlotte Christman, raised a concern about Heck's methods. Christman, an experienced member of both the accounting office and CSD, stated that Heck "had more trouble grasping the accounts payable system" than any other Kenyon College employee. (Christman Depo. at 31.)

Despite Christman's comments, Heck consistently received high marks on her performance reviews during her tenure with the Bookstore and until a month before her departure from Kenyon. On the other hand, Finefrock apparently did not find Heck's performance to be satisfactory.

## C. Heck's Claims of Pressure to Retire

Heck claims that, as early as 1993, she felt pressure to retire from her job at the Bookstore, particularly from Finefrock. She allegedly related these concerns to others at Kenyon College, including Karen Frasca, Director of Staff Relations and Employee Benefits. Heck stated that she learned that Finefrock wanted to "get rid of some of the older employee[s] if hiring newer ones at a lower rate meant saving money." (Pl.'s Mem. Contra to Defs.' Mot. for Summ. J., Ex. D at 2.) Part-time employees of the Bookstore earned $4.25 per hour, while Heck earned $8.09 per hour.

At some point during the fall of 1994, Kenyon instituted a new computer system. Heck claims that she did not receive adequate training on the computer system. In fact, Heck claims that she frequently asked for more training on the computer, but Kenyon did not provide her with such training.

Shortly after the new computer system was put in place, Yvonne Farson became Heck's supervisor. Heck alleges that Farson began sharing information with her that Finefrock wanted to hire younger persons with no benefits to do invoice work, as well as data entry. Heck viewed this information as threatening to her position because the younger workers would perform the same tasks that she did. Because of these rumors, Heck confronted Finefrock. Finefrock and Heck met on Thursday, March 16, 1995, to discuss Heck's future at the Bookstore.

During the course of the March 16 meeting, Finefrock told Heck that her work was not satisfactory and that she needed to improve her speed and accuracy on the computer. Heck further claims that Finefrock told her that "times were changing" and that she needed to "catch[ ] up with the times." (Heck Depo. at 36.) Regardless of what was said at the meeting, Heck left the meeting very upset. Later that day, Heck allegedly became involved in an incident that led to the end of her tenure at Kenyon.

## D. The Alleged Computer Crash

As part of her data entry responsibilities, every Wednesday the Bookstore required Heck to balance and audit the Bookstore's account. CSD advised Heck to perform her audit before Thursday. Further, CSD advised Heck not to use the computer system for data entry on Thursdays. Each Thursday, Kenyon's computers issued checks to Kenyon's creditors. CSD advised Heck that if she were to use the computer system to enter data on a Thursday, her activity could cause part of Kenyon's computer system to crash.

Shortly after her meeting with Finefrock on Thursday, March 16, Heck allegedly entered the computer system. Apparently, Heck's presence in the system inputting data caused Kenyon's system to fail or "crash." As a result, Heck "crashed" Kenyon's computer system and delayed Kenyon's ability to issue checks for a few days.

Heck was on vacation the week after the computer crash. At some point during her vacation, Heck met with the Kenyon College EEO Officer, Wendy Hess. Heck told Hess that Finefrock wanted to get rid of her because of her age. Heck claims that she told Hess to relay her concerns to the Kenyon College President. Hess claims that she told Heck that if she were upset, she should file a grievance against Finefrock. Heck denies that Hess told her of her rights to file a grievance.

Upon her return from vacation on March 28, 1995, Finefrock questioned Heck about the computer crash that she allegedly caused. Heck claims the meeting began with accusations from Finefrock about how much damage that Heck caused Kenyon by crashing the computer. Finefrock testified that this was the second time that Heck crashed the computer, although there is no evidence of a second computer crash. (Pl.'s Mem. Contra to Defs.' Mot. for Summ. J., Finefrock Aff. at Ex. ¶ 6.) Finefrock continued the meeting by telling Heck that she would be terminated in a little more than ninety days on June 30, 1995. More specifically, Finefrock told Heck that she had the option of retiring or being fired. Finefrock suggested that if she were to retire, Heck would receive preferable benefits. Heck claims that, at the time, she reluctantly agreed to retire. She now claims that she did not wish to retire but "instead agreed to leave [Kenyon] College's employ[ment] because she felt that she had no other option available to her." (Pl.'s Mem. Contra to Defs.' Mot. for Summ. J. at 11.)

### E. Heck's Final Weeks at the Bookstore

On April 25, 1995, Kenyon College conducted a nonexempt employee performance appraisal of Heck. This appraisal was the first negative report that Heck received during her tenure at Kenyon. The report indicated that Heck has "sufficient knowledge to perform the duties of the position [but] needs to be careful to stay off the computer during down time." (Defs.' Mot. for Summ. J., Ex. C at 1.) The report also indicated that Heck needed improvement in "accuracy in keying invoices, knowing when to be off the computer and staying off during those times." (Id.) Further, the report suggested that Heck improve in the following area: "A bit much socializing in store, needs to keep store information more confidential." (Id. at 2.)

In response to the report, Heck made the following comments:

You are right in my needing to stay off the computer during downtimes. I'm very sorry that it jammed up the works Thursday, March 16, by my entering invoices during that time. I realize being upset over my talk with [Finefrock] that morning was no excuse to totally forget you are to stay off the computer. I know this is a new system and people make mistakes. I understand why [Finefrock] was so upset and asked me to leave by June 30th because of this error but he said it was my second time and I am confused on this but again, very sorry if it was . . . .

I really thought I was being accurate in keying invoices. I still believe that if you can key nearly 500 invoices in less than 3 days and only find about 3 mistakes before sending the final audit to accounting, that that is pretty good. I agree tho [sic] that accuracy does help speed . . . .

I understand speed in entering invoices is important. I thought that entering and balancing 143 invoices in one and one-half hours correctly was pretty good speed. Also I prepared around 384 invoices in less than 2 days to be entered in the computer and thought that too was pretty good speed. But as [Finefrock] says, maybe the girls from the career center will do better than that. I just wish I could have had more training on the computer. I felt that I have always tried to do my best with what training I was given.

I will try very hard until June 30th to not socialize with my fellow employees.

Thank you for letting me make these comments. I will leave with great sadness as I was really looking forward to being here another year even tho [sic] it might have been part-time.

(*Id.* at 3–4 (emphasis omitted).) Thus, from Heck's comments at the time, she believed that she caused the computer to crash. Further, Heck felt that she performed her job well. Finally, Heck indicated that she considered working at Kenyon College for one more year, possibly in a part-time position.

Around the time of her evaluation, Kenyon College claims that they offered Heck a job at another position at Kenyon. Further, Kenyon College asserts that Heck refused their offer. In her deposition, Heck described a conversation with Wendy Hess where the subject of another campus job was discussed:

> [Finefrock] mentioned to me maybe I could become a cashier or that I could sell stationery, and the second meeting on the 28th [of March 1995] he told me there were no jobs available in the book store for me. So [Hess] was asking me what my plans were ... and would I want to find a job on campus somewhere else. And I told her I didn't want to work for Kenyon College, period, if that's the way they treated people.

(Heck Depo. at 116.) Kenyon College claims that this statement shows that Heck turned down a job offer to work elsewhere on campus.

Regardless of the reason for her departure, Kenyon College treated Heck's departure as a retirement. (Defs.' Supp. to Mot. for Summ. J., Ex. D, Cabral Aff. at ¶ 4.) However, shortly before she left Kenyon, Heck claims that Finefrock attempted to force her to sign a retirement letter. Heck claims that she refused to sign the letter.

Around this time, Heck turned to Karen Frasca, the staff relations person at Kenyon, for support. Frasca exchanged e-mail messages with Heck and encouraged her. Frasca also contacted Wendy Hess, who apparently also communicated with Heck. Hess then sent an e-mail message to Finefrock. Part of that message reads, "SO—under the circumstances, [Heck] isn't terribly willing to say that she wants to retire when in fact, she doesn't wish to retire at all. She feels that [Kenyon] College is forcing her to retire when what we really want, is to fire her." (Pl.'s Mem. Contra to Defs.' Mot. for Summ. J., Ex. J.) Later in the message, Hess suggests that Kenyon reach a settlement with Heck over her departure. (*Id.*)

Heck claims that she felt uncomfortable at Kenyon through the end of June 1995. Heck claims that shortly before she left, she had a hostile meeting with Finefrock where he allegedly became abusive towards her. Sometime after the meeting, Heck claims that Finefrock approached her and tried to force her to sign a resignation letter. When she refused, Finefrock allegedly "fired" her and escorted her out of the Bookstore. (Heck Depo. at 63.) That incident occurred on Heck's final day of work, June 19, 1995. Finefrock later filled Heck's position with two part-time workers who received no benefits.

### F. The Two Complaints

After she stopped working at Kenyon, Heck filed multiple complaints against Kenyon College with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"). On October 16, 1996, Heck filed a complaint in this Court in case number 96–1050. One year later, Heck filed a ten-count complaint in the Knox County Court of Common Pleas.

### 1. 96–1050—Heck's Federal Complaint

Heck's complaint in 96–1050 contained two counts. In her first count, Heck alleges that Kenyon College's Board of Trustees violated the Age Discrimination in Employment Act. Heck further asserts that she exhausted her administrative remedies by filing a charge with OCRC. The charge, in the relevant part, states that:

> 1. I am sixty-eight years of age (d.o.b. June 12, 1927). I was employed with respondent from January 12, 1988 through June 19, 1995, as an assistant bookkeeper. I was subjected to unwelcome harassment, most recently on June 19, 1995, when I was terminated.

2. On June 19, 1995, Jack Finefrock, Manager, (who is 46 years of age) terminated me for refusing to retire. Respondent failed to take prompt remedial action against the harassment.

3. I believe that I was subject to unwelcome harassment due to consideration of my age, 68 years, because:

 a. [Finefrock harassed me with incidents including] his continually asking me when I was going to retire and his making comments about wanting to get rid of older employees. . . .

4. I believe that I was terminated due to consideration of my age, 68 years, because:

 a. I was qualified to remain in the position as an assistant bookkeeper[;] despite this, I was terminated;

 b. I was replaced by [two younger workers].

(Defs.' Mot. for Summ. J., Ex. J.) Thus, Heck's age discrimination claim is based upon the alleged harassment she received from Finefrock.

The second count of 96–1050 is a claim that Kenyon College's Board of Trustees violated Heck's rights under ERISA by terminating her. Specifically, Heck claims that the Board of Trustees violated 29 U.S.C. § 1140 (1994) by interfering with her protected rights to benefits.

### 2. 97–1255—Heck's State Complaint

One year to the day after filing her Complaint in 96–1050, on October 16, 1997, Heck filed a ten-count Complaint against Kenyon College, Jack Finefrock and Joseph Nelson in the Knox County Court of Common Pleas. The first count alleges that Defendants engaged in age discrimination against Heck.[2] The second and third counts are claims against Finefrock under Ohio law stemming from her alleged discharge. The fourth claim is an intentional infliction of emotional distress claim against Finefrock, Nelson and the Board of Trustees. The fifth claim is a negligent infliction of emotional distress claim against all three Defendants. The

sixth claim is a charge that the Board of Trustees negligently retained Finefrock. Finally, the last four counts relate to claims that Defendants and/or Finefrock discharged Heck in violation of Ohio public policy.

On November 18, 1997, Defendants filed a notice of removal to remove the Complaint to this Court. The basis for removal was that Heck's Complaint demanded "[r]einstatement to her position, with back pay and benefits." (Pl.'s Compl., 97–1255 at 7.) Defendants argue that this demand for relief could not be brought under state law; more specifically, Defendants argue that the right to recover benefits from a pension plan is governed exclusively by ERISA. Furthermore, Defendants claim that the Sixth Circuit held that ERISA claims to recover benefits preempts state claims for benefits. Finally, Defendants argue that the Supreme Court held that the defense of ERISA preemption gives this Court federal question jurisdiction.

Heck's state Complaint was removed to this Court and docketed as case number 97–1255. Thereafter, this Court consolidated 96–1050 with 97–1255.

### G. The Present Motion

On November 28, 1997, Defendants filed a motion for summary judgment in 97–1255 for judgment on all of Heck's state law claims and on Defendant's claims that Heck's Complaint was preempted by ERISA. On January 9, 1998, Defendants filed a supplement to their motion for summary judgment seeking judgment on Heck's two federal claims in 96–1050. As noted below, Defendants sought dismissal of all state claims in 97–1255 on many different grounds, including ERISA preemption. Defendants sought judgment in 96–1050 claiming that Heck could not make out a prima facie case under ADEA and claiming that Heck's ERISA claim was without merit.

### II. STANDARD OF REVIEW

 ■ Summary judgment is appropriate only in a limited number of circumstances.

---

**2.** The Complaint also alleged gender discrimination. Heck later dropped those allegations. (*See* 97–1255, Doc. # 23 at 4.)

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that summary judgment shall be granted only:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This burden on the moving party may be discharged by "showing" that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court held that the standard of summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This is true where, for instance, the dispute turns only on a legal question and the moving party must prevail as a matter of law even if the court were to resolve all factual disputes in favor of the non-moving party. *See Ross v. Franzen*, 777 F.2d 1216, 1222 (7th Cir.1985).

In addition, a summary judgment motion requires special treatment of the record. The Court "must view the evidence presented through the prism of the substantive evidentiary burden" and determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Nonetheless, in making this determination the Court may not impinge upon the proper function of the jury. Therefore, all of "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The nonmoving party does have

the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. If the nonmoving party presents evidence that is "merely colorable" or "not significantly probative," then summary judgment must be granted. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. It is with these standards in mind that the instant motion must be decided.

## III. ANALYSIS

Before examining Defendants' motion for summary judgment, the Court must consider a preliminary matter. The Court then will examine Defendants' arguments in their motion for summary judgment in 96–1050. In 96–1050, the Court will examine Heck's ADEA claim before examining Heck's ERISA claim. The Court will then examine the only federal claim in 97–1255—Defendants' claim that Heck's state law claims are preempted by ERISA. Finally, the Court will dispose of a frivolous claim raised by Heck in her complaint in 97–1255.

### A. A Preliminary Matter

The Court previously left unresolved a portion of Defendants' February 12, 1998 motion to have requests for admission deemed admitted. Defendants' February 12 motion contended that Heck had not adequately responded to their requests for admission. The Court held in abeyance portions of that motion to allow Heck to amend her responses. Heck subsequently amended her responses; those responses directly answer Defendants' requests. Consequently, the Court **DENIES** the remaining portion of Defendants' motion to have requests for admission deemed admitted. Having disposed of that preliminary matter, the Court turns its attention to Defendants' motion for summary judgment in 96–1050.

### B. Heck's ADEA Claim

#### 1. Prima Facie Case Under the ADEA

In 96–1050, Heck claims that Defendant, the Board of Trustees of Kenyon College,

illegally discriminated against her in violation of the ADEA. The ADEA provides in pertinent part that "[i]t shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge ·any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a). The statute protects individuals between the ages of 40 and 70 years. *See* 29 U.S.C. § 631(a).

Violations of the ADEA may be established by one of two different methods: disparate treatment or adverse impact. *See Wooden v. Board of Educ.*, 931 F.2d 376, 379 (6th Cir.1991). In this case, Heck brings a disparate treatment claim. In other words, Heck argues that Defendant simply treated her less favorably than others because of her age. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

■ In a disparate treatment case, this Court uses the modified *McDonnell Douglas* test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a prima facie case of age discrimination under the ADEA, a plaintiff must present evidence that (1) he or she was a member of the protected class; (2) that he or she suffered an adverse employment action or disposition; (3) that he or she was qualified for the position either lost or not gained; and (4) that a person younger than the plaintiff replaced, or was selected over, the plaintiff. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994). Additionally, "[e]ven if the plaintiff proves the [prima facie case] criteria [s]he must also show that age was a determining factor in the company's decision to discharge h[er]." *Stein v. National City Bank*, 942 F.2d 1062, 1064 (6th Cir.1991) (citing *Rose v. National Cash Register Corp.*, 703 F.2d 225 (6th Cir. 1983)).

■ Once a prima facie case has been established, the burden of production shifts to the defendant to present a legitimate nondiscriminatory reason for the employment action taken. *See Manzer*, 29 F.3d at 1082. If the defendant can present such reasons, the burden of production returns to the plaintiff, who must "produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Id.* at 1083. The Supreme Court clarified, however, that the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). In other words, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083. If a plaintiff is able to produce that evidence, by showing that the reason given by the employer is (1) factually false, (2) was not the actual reason for the action, or (3) was insufficient to motivate the action, "such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case." *Id.* at 1084.

### 2. Heck's Prima Facie Case

Defendants [3] claim that Heck cannot make out a prima facie case under the ADEA for two reasons. First, Defendants claim that Heck did not suffer an adverse employment action. Second, Defendants argue that Heck was not qualified for the position she lost. Despite these arguments, the Court finds that Heck can make out a prima facie case of age discrimination. The Court will examine the four parts to the prima facie case seriatim.

#### a. Protected Class

Defendants do not apparently dispute the first element that Heck is a member of a

---

**3.** Although Heck only sued the Kenyon College Board of Trustees in 96–1050, all three Defendants in 97–1255 join in the motion for summary judgment. Accordingly, the Court will use the term "Defendants" from herein, although technically the only Defendant moving for summary judgment in this case is the Board of Trustees of Kenyon College.

protected class. Thus, Heck established this element of her prima facie case in a manner sufficient to survive summary judgment.

### b. Termination

■ On the other hand, Defendants contest the second element of the prima facie case, namely that Heck suffered an adverse employment decision. Defendants argue that Heck was not terminated from her position at the Bookstore because "Heck has conceded that she was offered a job anywhere on campus but that she refused." (Defs.' Mot. for Summ. J. at 15.) In summary, Defendants claim that "because [Heck] admittedly refused the offer to work at Kenyon College anywhere on campus, she was not the subject of an 'adverse employment action.'" (*Id.*) Defendants' support for this argument comes from Heck's deposition. In her deposition, Heck described a meeting she had with Hess where Hess asked Heck about her plans. Heck responded by stating that:

> [Finefrock] mentioned to me maybe I could become a cashier or that I could sell stationery, and the second meeting on the 28th he told me there were no jobs available in the book store for me. So [Hess] was asking me what my plans were ... and would I want to find a job on campus somewhere else. And I told her I didn't want to work for Kenyon College, period, if that's the way they treated people.

(Heck Depo. at 116.) Kenyon College claims that this statement shows that Heck turned down a job offer to work elsewhere on campus.

Heck, on the other hand, claims that Hess never offered her the opportunity to work at another position on campus. Heck insists that Hess only asked if she would consider another position on campus. Further, Heck attempts to offer a statement allegedly made by Finefrock where he admits that he terminated her.[4] Because Heck fails to provide the Court with a copy of Finefrock's deposi-

tion, the Court did not consider his alleged statement.

Nevertheless, the Court finds that Heck's deposition offers ample support to establish the second element of her prima facie case under the ADEA. Throughout her deposition, Heck claims that she was fired. (*See, e.g.,* Heck Depo. at 13, 59, 63.) Heck's statement that she would not work anywhere else on Kenyon's campus does not show that she was offered a position elsewhere. Thus, the Court finds that, for the purposes of summary judgment only, Defendants terminated Heck.

### c. Job Performance

■ Defendants also contest the third element of the prima facie case, namely that Heck was qualified for her position, by offering evidence that Heck was not qualified with respect to data entry on the computer. In support, Defendants offer a statement of Heck purporting to be an admission that she "was not 'computer literate' in March 1995, even though the majority of her job involved key entry into the computer." (Defs.' Mot. for Summ. J. at 16.) Further, Defendants claim that Heck "had a continuing problem with speed and accuracy, as well as improperly marking audits a[s] 'balanced' when in fact they were not balanced." (*Id.*) Finally, Defendants offer proof that Heck "either froze, crashed or bombed [Kenyon] College's entire accounts payable system when she entered data into the computer on Thursday, March 16, 1995, after she had been advised by a supervisor, Ms. Farson, not to enter the system on Thursday." (*Id.*)

Despite Defendants' arguments that Heck cannot make out a prima facie case under the ADEA because she was not qualified for the position, this Court refuses to consider Defendants' proffered reasons for discharge in assessing the existence of a prima facie case of discrimination. *See MacDonald v. Eastern Wyo. Mental Health Center,* 941 F.2d 1115, 1119 (10th Cir.1991); *Siegel v. Alpha*

---

4. In support of her argument, Heck cites to a number of different depositions. Unfortunately for Heck, the only depositions filed with the Court and available for consideration are Marilyn Heck's deposition, Yvonne Farmon's deposition and Charlotte Faylene Christman's deposi- tion. The depositions of Jack Finefrock and Wendy Hess were not introduced into the record. Consequently, the Court did not consider these "missing" depositions when examining Defendants' motion for summary judgment. *See* Fed. R.Civ.P. 56(e).

*Wire Corp.,* 894 F.2d 50, 54 (3d Cir.1990); *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1505 (5th Cir.1988); *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 512 (7th Cir.1986); *Ligon v. Triangle Pac. Corp.,* 935 F.Supp. 936, 940–41 (M.D.Tenn.1996). *Cf. Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1180 (6th Cir.1983) ("[I]f we were to hold that a plaintiff's prima facie case fails if his qualifications are challenged by the defendant, we would effectively preclude age discrimination suits of this kind.").

■ Instead, a plaintiff may make out a prima facie case of discrimination by credible evidence that she continued to possess the objective qualifications when she was hired or by her own testimony that her work was satisfactory, even when disputed by the employer, or by evidence that she held her position for a significant period of time. *See Ligon,* 935 F.Supp. at 941 (citing *Mac-Donald,* 941 F.2d at 1121). In this case, Heck comes forward with proof of her qualifications and her experience. As such, Heck has adequately established the third element of her prima facie case.

### d. Replacement

Finally, Defendants do not contest the fourth element of the prima facie test. In addition, the Supreme Court eliminated the fourth element from the *McDonnell Douglas* analysis in age discrimination cases. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

### e. Summary

■ Consequently, Heck establishes a prima facie case of age discrimination. "Nevertheless, a plaintiff who succeeds in establishing a prima facie case does not automatically survive a motion for summary judgment." *MacDonald,* 941 F.2d at 1121. Thus, the Court must examine Defendants' proffered explanation for Heck's termination.

### 3. Defendants' Rebuttal

■ Because Heck established a prima facie case of age discrimination for summary judgment purposes, she creates a "presumption that the employer engaged in impermissible age discrimination." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993). To rebut this presumption, Defendants must articulate a legitimate nondiscriminatory reason for the employee's termination. *See Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1329 (6th Cir.1994).

In this case, Defendants state a legitimate, nondiscriminatory reason for Heck's termination. Defendants argue that Heck was not qualified for her position, had trouble maintaining speed and accuracy, and, above all, did not perform her job duties in an appropriate manner. Defendants offer evidence that Heck did not properly perform her job when she audited the Bookstore accounts. Defendants introduced evidence into the record demonstrating that instead of checking her work before sending it to the accounting department, Heck would send the audit and later attempt to correct the errors. Then Heck would re-balance the accounts and forward the new audit to accounting. This procedure caused confusion in the accounting department and became an administrative problem. Accordingly, the Court finds that this evidence is sufficient for the Court to find that Defendants rebut the presumption that they engaged in impermissible age discrimination.

### 4. Pretext

■ Because Defendants articulated a legitimate, nondiscriminatory reason for Heck's termination, Heck must establish that the proffered explanation is pretext for unlawful age discrimination. *See Cooley,* 25 F.3d at 1329. Heck must have a full and fair opportunity to demonstrate that Defendants' proffered reason was pretextual, while retaining her ultimate burden of proving intentional discrimination. *See MacDonald,* 941 F.2d at 1119. The ultimate issue, however, is whether age was a determining factor in Defendants' decision to fire Heck. *See Blackwell,* 696 F.2d at 1180. In other words, the Court must determine whether Heck raised genuine issues of material fact as to the pretextual nature of Defendants' reasons.

■ Heck can prove pretext by showing that Defendants' reasons have no basis in fact or, if they have a basis in fact, by

showing that the reasons were not really factors motivating the discharges, or if they were factors, by showing that they were jointly insufficient to motivate the discharges. *See Cooley*, 25 F.3d at 1329–30. Essentially, Heck needs to show that the presumptively valid reasons for her discharge were, in fact, a cover-up for discriminatory decisions. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990).

 In an attempt to establish pretext, Heck offered her performance evaluations from her supervisors. For example, in 1991, Heck's supervisor, Nancy Melone, wrote a favorable review of Heck. Nevertheless, it is Heck's performance at the time of termination which is relevant. *See Beard v. Coca–Cola Bottling Co.*, 1990 WL 299806, 55 Fair Empl.Prac.Cas. (BNA) 765, 768 (S.D.Ohio Mar.30, 1990), *aff'd without opinion*, 925 F.2d 1462, 1991 WL 21985 (6th Cir.1991); *Smith v. Chamber of Commerce*, 645 F.Supp. 604, 607 (D.D.C.1986). Thus, these evaluations do not discredit Defendants' proffered reason for termination.

Heck also attempts to introduce evidence designed to impeach statements that Finefrock was not satisfied with Heck's performance. As noted above, however, Heck failed to file a copy of Finefrock's deposition with her memorandum. Consequently, the Court will not consider Finefrock's alleged testimony in rendering its decision.

On the other hand, Heck provides the Court with a copy of an affidavit from Finefrock. That affidavit damages Heck's argument because Finefrock states that Heck crashed the computer system in March of 1995. (Pl.'s Mem. Contra to Defs.' Mot. for Summ. J., Ex. E, Finefrock Aff. at ¶ 6.) Further, the affidavit indicates that Finefrock told Heck that she could either be fired immediately or retire. (*Id.* at ¶ 7.) Finefrock also testifies that Heck told him that she would prefer to retire.[5] (*Id.*) Regardless of whether Heck retired or was fired, the evidence on the record offers proof that

Defendants' motivation in Heck's departure was because of the March 16, 1995 computer incident. Therefore, Heck's evidence does not suggest that Defendants' proffered reason was pretextual.

 In further support of her argument that Defendants' reasoning was pretextual, Heck suggests that Defendants terminated her to save money. As the Supreme Court noted, however, "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In particular, the Supreme Court held that the ADEA only protects employees terminated because of the stereotypical notion that the employee's productivity and competency deteriorate with age. *See id.* at 610, 113 S.Ct. 1701. When the motivating factor in an employer's decision to terminate an employee is "pension eligibility, salary or some other correlate with age unrelated to ageist stereotypes, such decisions are not actionable disparate treatment." 1 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 591 (Paul W. Cane, Jr., ed., 3d ed. 1996). *Cf. Biggins*, 507 U.S. at 611, 113 S.Ct. 1701 ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.' "). Thus, Heck's argument is without merit.

Finally, in support of her argument, Heck cites to two cases from the Sixth Circuit: *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, *amended by* 97 F.3d 833 (6th Cir.1996); and *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211 (6th Cir.1996). These cases are inapplicable and do not support her position.

On the other hand, Defendants offer evidence that Heck, at times, did not perform her job with proper care. Heck admits that

5. As the Court held earlier, although Heck was presented with this option to be fired or to retire, Heck's decision to "retire" really was a termination on the part of Kenyon College. Even though Kenyon College chooses to treat Heck as being retired, (Defs.' Supp. to Mot. for Summ. J., Ex. D., Cabral Aff. at ¶ 4), for the purposes of this Opinion and Order, the Court finds that Kenyon College really terminated her.

she made mistakes and admits that she caused a problem by entering data on a Thursday when she was told not to do so. Heck's admissions in response to her final evaluation are most damning:

> You are right in my needing to stay off the computer during downtimes. I'm very sorry that it jammed up the works Thursday, March 16, by my entering invoices during that time. I realize being upset over my talk with [Finefrock] that morning was no excuse to totally forget you are to stay off the computer. I know this is a new system and people make mistakes. I understand why [Finefrock] was so upset and asked me to leave by June 30th because of this error but he said it was my second time and I am confused on this but again, very sorry if it was.

(Defs.' Mot. for Summ. J., Ex. C at 3.) Although she claims to have been stressed when she wrote these comments, Heck nevertheless admits that she made an error when attempting to enter invoices into the computer on a Thursday.[6] Thus, the Court finds that Heck's attacks on Defendants' proffered reason for her discharge fail.

After reviewing the arguments of both parties and the evidence submitted, the Court concludes that Heck has not shown the existence of a genuine issue of material fact with regard to the existence of pretext. Heck fails to rebut the validity of Defendants' reasons for her discharge. Much of Heck's evidentiary support, such as the e-mail from Karen Frasca to Heck, does not prove that Defendants acted with discriminatory animus. Heck has not produced any evidence, direct, indirect or circumstantial, from which it could reasonably be inferred that she was terminated because of her age. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as it relates to Heck's ADEA claims set forth in her first cause of action.

### C. Heck's ERISA Claim

Defendants also move for summary judgment on Heck's ERISA claim set forth in her second cause of action. Defendants move for summary judgment on multiple grounds, claiming that Heck is receiving all the benefits to which she is entitled and claiming that Heck failed to exhaust her administrative remedies. The Court will address the exhaustion claim before turning to the merits of the ERISA claim.

### 1. Exhaustion of Administrative Remedies

Heck claims that Defendant, the Board of Trustees of Kenyon College, interfered with her protected rights under ERISA in violation of 29 U.S.C. § 1140 (1994) (otherwise known as "section 510" of ERISA). Section 510 of ERISA provides in part that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or the Welfare and Pension Plans Disclosure Act, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140.

Defendants claim that Heck failed to exhaust her administrative remedies before bringing this section 510 claim. The Sixth Circuit has not addressed the issue of whether a plaintiff need exhaust her administrative remedies when bringing a section 510 claim. However, another court in this district decided that exhaustion of administrative remedies is not necessary. *See Stumpf v. Cincinnati, Inc.*, 863 F.Supp. 592, 598 (S.D.Ohio 1994). Additionally, other courts have held that exhaustion is not necessary. *See Chailland v. Brown & Root, Inc.*, 45 F.3d 947 (5th Cir.1995); *Zipf v. American Tel. & Tel. Co.*, 799 F.2d 889 (3d Cir.1986); *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir.1984). *But see Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir.1985); *Kross v. Western Elec. Co.*, 701 F.2d 1238 (7th Cir.1983). The Court finds the reasoning of *Stumpf*

---

**6.** In her defense, the Court finds that there is no genuine issue of material fact that Heck "crashed" the computer twice. The record contains only credible evidence to suggest that Heck "crashed" the Kenyon College computer system one time, on Thursday, March 16, 1995.

persuasive. For the reasons set forth in the *Stumpf* opinion, this Court holds that Heck need not exhaust her administrative remedies. Consequently, the Court will examine the merits of Heck's ERISA claim.

## 2. Merits of Heck's ERISA Claim
### a. Prima Facie Case Under ERISA § 510

Defendants also claim that Heck is receiving all the benefits to which she is entitled to under her ERISA plan. Heck, on the other hand, claims that had she not been fired, she would be entitled to free major medical insurance for life, life insurance and increased retirement benefits. Heck further claims that Defendants fired her to prevent her from fully vesting in the pension plan. Even though Defendants do not explicitly address Heck's claims, Heck properly argues that she needs to establish her prima facie case under § 510 to survive a motion for summary judgment. (Pl.'s Mem. Contra to Defs.' Mot. for Summ. J. at 41.)

To avoid summary judgment on a § 510 claim, an employee must show the existence of a genuine issue of material fact that the employer engaged in prohibited conduct for the purpose of interfering with the employee's attainment of any right to which he may become entitled under an ERISA-protected plan. *See Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir.1996); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir.1992). The plaintiff must demonstrate that the employer engaged in the prohibited conduct with the specific intent of violating ERISA. *See Humphreys*, 966 F.2d at 1043. The plaintiff is not required to show that the employer's sole purpose in discharging her was to interfere with her pension benefits, but rather that it was a motivating factor in the decision. *See id.*

Notwithstanding the Sixth Circuit's good definition of the prima facie case, the Court finds that the "Turner/Dister approach" provides a good starting point for examining a plaintiff's prima facie case under § 510. *See Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3d Cir.1990) (citing *Gavalik v. Continental Can Co.*, 812 F.2d 834

(3d Cir.1987); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111–12 (2d Cir.1988) (both cases are cited with approval in *Shahid*, 76 F.3d at 1411)). Under the Turner/Dister framework, a plaintiff must show that she (1) belongs to the protected class; (2) was qualified for the position involved; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent is present. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 642 (7th Cir.1995) (citing *Turner*, 901 F.2d at 347). The nature of plaintiff's burden of proof at the prima facie stage is de minimus. *See Dister*, 859 F.2d at 1114.

If the plaintiff proves a prima facie case, the burden then shifts to the employer to introduce a legitimate, nondiscriminatory reason for its challenged action. *See Humphreys*, 966 F.2d at 1043. If the employer successfully asserts a legitimate reason for its actions, then the presumption of wrongful action drops from the case, and the plaintiff must either prove that the interference with pension benefits was a motivating factor in the employer's actions or prove that the employer's proffered reason is unworthy of credence. *See id.* As a sister court in this circuit noted,

> upon the employer's showing of legitimate reasons for the termination, an employer's 'cost savings and proximity to benefits' will not always entitle a plaintiff to a trial.... Thus, where the loss of benefits was a consequence of or incidental to the employee's discharge, there is an absence of specific intent. *See Barbour [v. Dynamics Research Corp.]*, 63 F.3d [32,] 37 [(1st Cir. 1995) ]; *Hopkins v. Seagate*, 30 F.3d 104, 106 (10th Cir.1994); *Hart v. Reynolds & Reynolds Co.*, [999 F.2d 540] 1993 WL 243797, at *4 (6th Cir. July 6, 1993).

*Poff v. Chattanooga Group, Inc.*, 912 F.Supp. 298, 306 (E.D.Tenn.1996) (citation omitted). *See also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1117 n. 1 (2d Cir.1988) (noting that courts cannot consider "mere cost savings and proximity to benefits [as] sufficient per se to create a genuine issue of material fact"); *Johnson v. Square D Co.*, 977 F.2d 581, 1992 WL 296854, at *2 (6th Cir.1992) (noting that the "mere fact" an employee's

"termination would save [the employer] money in pension costs, standing alone, is not sufficient to prove the requisite intent") (citation omitted). Accordingly, the Court must examine whether the loss of benefits suffered by Heck was a consequence of or incidental to her discharge. If so, Defendants are entitled to summary judgment.

### b. Heck's Prima Facie Case

In order to prove her prima facie case, Heck must demonstrate that Defendants acted with specific intent to violate ERISA. *See id.* If she fails to show specific intent to violate section 510 of ERISA on the part of Defendants, Heck fails to demonstrate a prima facie case and this Court will grant summary judgment for Defendants. *Cf. Wyatt v. United States Fidelity & Guar. Co.,* 59 F.3d 172, 1995 WL 376719, at *2 (6th Cir.1995); *Barbour,* 63 F.3d at 39; *Poff,* 912 F.Supp. at 306.

As noted above, Heck must prove her prima facie case to survive summary judgment. Using the Turner/Dister approach, the Court finds with respect to her prima facie case that Heck showed that she belongs to the protected class and that she was qualified for the position involved. The real controversy for the Court is whether Heck offered evidence that she was discharged under circumstances that provide some basis for believing that the prohibited intent was present. In this case, Heck alleges that the reason that she was terminated was that Defendants wished to save money and avoid paying her more benefits.

In support of her allegations, Heck offers her affidavit. Heck's affidavit states that a co-worker "made me aware of the fact that Jack Finefrock wanted to replace older employees of the bookstore with part-time employees with no benefits." (Pl.'s Mem. Contra to Defs.' Mot. for Summ. J., Ex. A at ¶ 5.) Further, in her affidavit, Heck claims that:

> If I had not been terminated by Defendant Finefrock, after ten years with Kenyon College, I would have been entitled to free major medical insurance for the remainder of my life. As it stands now, I have to pay for my medical major benefits.

> Additionally, had I not been terminated from my position by Mr. Finefrock, I would have continued to participate in Kenyon College's life insurance plan. However, as a result of my termination, I have no life insurance benefits.

> Also, had I not been terminated from my position by Mr. Finefrock, I would have continued to participate in Kenyon College's retirement plan. The benefits that are derived from Kenyon College's retirement plan[ ] are based upon the number of years of service with [Kenyon] College. As a result of my termination, the amount of retirement benefits that I currently receive is greatly reduced....

(*Id.* at ¶¶ 15–17.) Thus, from the face of Heck's affidavit, she alleges that she would have received greater benefits from Kenyon had Defendants not terminated her. This evidence is sufficient to create an inference that the prohibited intent was in fact present. *Cf. Dister,* 859 F.2d at 1108 (Plaintiff established inference of discrimination where employee was discharged shortly before vesting of pension); *Turner,* 901 F.2d at 348 (same); *Duvall v. Polymer Corp.,* No. CIV.A. 93–CV–3801, 1995 WL 581910, at *12 (E.D.Pa. Oct.2, 1995) (same). Hence, Heck established a prima facie case.

### c. Defendants' Rebuttal

The burden of production now shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the discharge. *See Burdine,* 450 U.S. at 254–56, 101 S.Ct. 1089. As noted in the ADEA section, Defendants submit that Heck was terminated because she was not qualified for her position and had repeated problems inputting data and balancing her accounts. The Court previously concluded that these reasons are legitimate and nondiscriminatory and any inference of age discrimination drops from this case.

### d. Pretext

Once the employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the employee has the burden of persuasion on the issue of whether an intent to interfere with rights secured under ERISA played a determinative role in the decision to take action. *See*

*Humphreys,* 966 F.2d at 1043. After consideration of the record, the Court finds insufficient evidence to establish the prohibited intent. There is no evidence which supports a reasonable inference that Defendants' reason for discharging Heck was unworthy of credence or that Defendants were otherwise motivated by a discriminatory purpose.

Although Heck offered arguments that Defendants had the prohibited intent when they terminated her, these arguments are the same arguments made in connection with her ADEA claim. For the reasons set forth in section III.A.4., the Court finds those arguments to be without merit. Further, the Court finds Heck's conclusory affidavit to be insufficient to support her burden of proof on summary judgment. *Cf. Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 268 n. 2 (6th Cir.1986); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989); *Beard,* 1990 WL 299806, 55 Fair Empl.Prac.Cas. (BNA) at 768. Finally, Heck's contention that she was close to receiving free major medical insurance and life insurance benefits is wholly insufficient, without more, to establish the existence of a prohibited specific intent. *Cf. Beckwith v. International Mill Servs., Inc.,* 617 F.Supp. 187, 190 (E.D.Pa. 1985) (discharged employees who stated during their deposition that they had no proof other than their own beliefs that they were terminated to save money vis-a-vis the vesting of their pension benefits failed to state a claim under ERISA § 510). In sum, Heck fails to point to any distinct evidence in the record to support her claim that Defendants had the specific intent of terminating her in order to deny Heck her pension. Consequently, the Court **GRANTS** Defendants' motion for summary judgment on the ERISA § 510 claim.

### D. Preemption under ERISA

Having disposed of all of Heck's claims in 96–1050, the Court must now examine Defendants' motion for summary judgment as it relates to Heck's state law claims brought in 97–1255. Defendants argue that Heck's claims in 97–1255 are preempted by ERISA.

### 1. Substantive Law

■ In 97–1255, Heck asked the Court for various forms of relief, including reinstatement to her position with back pay and benefits. (97–1255, Pl.'s Compl. at 7.) In removing the case to this Court and in their motion for summary judgment, Defendants argue that Heck's demand for benefits is preempted by ERISA under 29 U.S.C. § 1132. Under § 1132, anyone who qualifies as a "participant or beneficiary" of an employee benefit plan may sue under ERISA to enforce various rights conferred by ERISA. Section 1132 impliedly also preempts actions brought in state court that could have been brought under ERISA's civil enforcement section under the "complete preemption" doctrine. *See, e.g., Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Alexander v. Electronic Data Sys. Corp.,* 13 F.3d 940, 943 (6th Cir.1994).

■ The Sixth Circuit noted that "the scope of the 'complete preemption' exception for removal is narrow." *Warner v. Ford Motor Co.,* 46 F.3d 531, 534 (6th Cir.1995). In the ERISA context, the Sixth Circuit held that the complete preemption exception for removal is narrowly limited to state common law or statutory claims that fall within the ERISA civil enforcement statute, 29 U.S.C. § 1132(a)(1)(B).[7] The Sixth Circuit held that those actions are removable to federal court because "the legislative history consistently sets out this clear intention to make [§ 1132(a)(1)(B)] suits brought by participants or beneficiaries federal questions for the purpose of federal question jurisdiction." *Warner,* 46 F.3d at 534. The Sixth Circuit concluded that:

> Therefore, in order to come within the [complete preemption] exception a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action "to recover benefits due to him under the terms of his plan, to enforce his rights

7. Section 1132(a)(1)(B) provides for federal jurisdiction for actions "by a participant or beneficiary [in an ERISA plan] . . . to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan," as provided in § 1132(a)(1)(B).

*Id.* at 534. Thus, for preemption to apply in this case, the Court must determine whether Heck's state law claims of age discrimination should be characterized as an ERISA action. The Court concludes that Heck's claims should not be characterized as an ERISA action and thus Heck may maintain her state law causes of action in state court.

In this case, Defendants argue that Heck's Complaint:

> specifically requests 'reinstatement to her position with back pay and benefits.' Preemption is particularly compelling in this case because Heck has filed an ERISA claim for benefits with this Court in Case No. C2–96–1050.... Defendants have requested that this case be consolidated with Case No. C2–96–1050 pursuant to Fed. R.Civ.P. 42(a). The Complaint in this case therefore 'relates to an employee benefit plan' and is therefore preempted by § 514(a) of ERISA.

(Defs.' Mot. for Summ. J. at 21–22.) Defendants' argument is without merit.

In 97–1255, Heck raises an age discrimination claim under Ohio law, along with a number of other related claims. Essentially, Heck alleges that Defendant Finefrock engaged in conduct that demeaned her and pressured her to retire. These allegations, in no way, require the Court to examine the substance of the ERISA beneficiary plan (as the Court did above). As in *Warner*, this case is a straight age discrimination case "which has no counterpart or superseding cause of action in ERISA." *Warner*, 46 F.3d at 534.

In 97–1255, Heck does not raise a claim that Defendants were, for example, providing her with less favorable treatment than other workers so as to avoid paying her ERISA benefits or that the motive for discharging her was to avoid paying her ERISA benefits. *See, e.g., Rokohl v. Texaco, Inc.,* 77 F.3d 126, 129–30 (5th Cir.1996) (employer may not use its ERISA plan as "gimmick" to trigger preemption and thereby avoid litigation in state court); *Hook v. Morrison Milling Co.,* 38

F.3d 776, 783 (5th Cir.1994) (holding that ERISA does not preempt state law claims when the claims "affec[t] only [an employee's] employee/employer relationship with [an employer] and not her administrator/beneficiary relationship with the company."). Ironically, Heck's claims could have been brought, and indeed were brought, under the federal ADEA. Because the federal ADEA is not preempted by ERISA, Heck's claims are not preempted by ERISA. Consequently, the Court finds that Heck's claims are not preempted by ERISA. *Cf. Rokohl,* 77 F.3d at 130; *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1405 (9th Cir.1988) ("No ERISA cause of action lies ... when the loss of pension benefits was a mere consequence of, but not a motivating factor behind, the termination of benefits.... [Thus, plaintiff's claim for discharge was] not preempted by ERISA simply because [the plaintiff] sought to recover lost salary and benefits."); *International Ass'n of Machinists & Aerospace Workers, Local Lodge No. 967 v. General Elec. Co.,* 713 F.Supp. 547, 558 (N.D.N.Y. 1989); *Schultz v. National Coalition of Hispanic Mental Health & Human Servs. Organizations,* 678 F.Supp. 936, 938 (D.D.C.1988); *Morningstar v. Meijer, Inc.,* 662 F.Supp. 555, 557 (E.D.Mich.1987). *But see Rodowicz v. Massachusetts Mut. Life Ins. Co.,* 857 F.Supp. 992, 999 (D.Mass.1994) (The court denied plaintiffs' motion to amend complaint to include state age discrimination claim because state law claim was "based on exactly the same factual allegations as their ERISA claims. As such, it indisputably 'relates to' a benefit plan ..." and is preempted.). Therefore, the Court **DENIES** Defendants' motion for summary judgment as it relates to the issue of preemption under ERISA in 97–1255. Because Heck's claims in 97–1255 are not preempted and thus do not support federal question jurisdiction, the Court must decide whether to address those claims or remand those claims to the Knox County Court of Common Pleas.

### 2. Issue of Remand

Although Heck did not file a motion for remand, the Court finds that Defendants had adequate notice that, should the Court

find that Heck's claims in 97–1255 were not preempted by ERISA, there would be no basis for jurisdiction over Heck's Complaint. Accordingly, the Court sua sponte raises the issue of remand.

The anchor for the Court's supplemental jurisdiction over the Heck's state law age discrimination claim, and the basis for removal of 97–1255, was the ERISA preemption issue—a federal question. Having concluded that the Heck's state law age discrimination claim is not preempted by ERISA and because there is no diversity jurisdiction over 97–1255, the Court must decide whether there is any other basis for supplemental jurisdiction over Heck's state law claim. The Court concludes that there is no other basis for supplemental jurisdiction over the state law age discrimination claim. Therefore, that claim must be remanded.

At first glance, the ADEA and ERISA claims Heck brings in 96–1050 are promising candidates to anchor supplemental jurisdiction for the state law claim. The state law claim arises out of the same transaction or occurrence as the ADEA and ERISA claims. In addition, the state law claim involves similar parties. Thus, the test for supplemental jurisdiction is apparently satisfied. Closer scrutiny, however, reveals that such an analysis would be based on a flawed understanding of both the removal statute and the effect of Rule 42(a) consolidation.

■■■ First, in order to be removable under 28 U.S.C. § 1441(a), a civil action brought in a state court must be one over which the district courts have original jurisdiction. Given that there is no basis for federal question jurisdiction over 97–1255, that case was not properly removed and pending before this court prior to consolidation. Second, given that the case was not properly pending before the Court, consolidation under Rule 42(a) was improper. *See U.S. for Owens–Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 647 (7th Cir.1987) (holding that an improperly re-moved case is not "pending before the district Court" for purposes of a Rule 42(a) consolidation). Finally, even assuming consolidation was proper, courts look at each component action in a consolidated case independently to determine whether there is subject matter jurisdiction. *See Bradgate Assocs. v. Fellows, Read & Assocs.*, 999 F.2d 745, 750–51 (3d Cir.1993); *Webb v. Just In Time, Inc.*, 769 F.Supp. 993, 998 (E.D.Mich. 1991); *see also* Joan Steinman, *The Effects of Case Consolidation on the Effective Procedural Rights of Litigants: What They Are, What They Might Be*, 42 U.C.L.A.L.Rev. 717, 750–61 (1995). This approach is rooted in the well-accepted principle that consolidated actions do not lose their separate identity upon consolidation. *See Johnson v. Manhattan Ry.*, 289 U.S. 479, 496–97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). Rather, consolidation is a tool of judicial convenience and efficiency and does not effect the substantive rights of the parties. *See id.* For all of these reasons, the Court concludes that 97–1255 must be remanded because the Court does not have supplemental jurisdiction over Heck's state law age discrimination claim.[8]

### 3. One Other Matter

Before ordering a remand for 97–1255, this Court must dispose of one other matter. In her Complaint in 97–1255, Heck raises a negligent or wanton infliction of emotional distress ("NIED") claim against Defendants. In this case, the elements of a tort for NIED are governed by Ohio law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■■■ Under Ohio law, Heck cannot bring a tort for NIED. *See Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 83, 603 N.E.2d 1126 (1991); *Hatlestad v. Consolidated Rail Corp.*, 75 Ohio App.3d 184, 598 N.E.2d 1302 (1991). Ohio courts do not recognize a separate tort for NIED in the employment context. *See id.; see also Tohline v. Central Trust Co.*, 48 Ohio App.3d 280, 284, 549 N.E.2d 1223 (1988); *Antalis v. Ohio*

---

8. The Court leaves the decision of whether Heck should be allowed to pursue her state law age discrimination case in state court to the wisdom of the Knox County Court of Common Pleas.

The Court only notes that Heck's ADEA claims and the state age discrimination claims appear to arise out of the same transaction and occurrence.

*Dep't of Commerce,* 68 Ohio App.3d 650, 589 N.E.2d 429 (1990). Consequently, a plaintiff may recover for emotional harm negligently inflicted by defendant only by bringing a traditional claim for NIED, requiring the plaintiff to show (1) that she was a bystander to an accident; (2) she reasonably anticipated the peril of the accident; and (3) she suffered serious and foreseeable emotional distress as a result of her cognizance or fear of the peril. *See Paugh v. Hanks,* 6 Ohio St.3d 72, para. 3 and 4, 451 N.E.2d 759 of the syllabus (1983). Therefore, Heck cannot allege a set of facts which, if proven, would entitle her to judgment on her claim of NIED. Because this cause of action is so patently without merit, the Court will dispose of this claim now, before remand, so that the state court need not waste time in dismissing this claim. The Court **GRANTS** Defendants' motion for summary judgment as it relates to Plaintiff's claim of NIED. The Court **DISMISSES** the fifth cause of action of Plaintiff's Complaint in 97–1255 **WITH PREJUDICE.** Further, the Court **ORDERS** the Clerk of Courts to **REMAND** 97–1255 to the Knox County Court of Common Pleas. This Court is without jurisdiction to hear 97–1255.

### IV. CONCLUSION

Upon consideration and being duly advised, the Court **GRANTS IN PART** Defendants' motion for summary judgment. The Court finds that Plaintiff's two causes of action in 96–1050 are without merit. Thus, the Court **DISMISSES WITH PREJUDICE** 96–1050 in its entirety. The Clerk is directed to enter judgment for Defendant, the Board of Trustees of Kenyon College, in 96–1050. However, the Court **DENIES IN PART** Defendants' motion for summary judgment as it relates to Defendants' claims of preemption in 97–1255. Because the Court is without jurisdiction to hear Plaintiff's claims in 97–1255, the Court **RE-MANDS** 97–1255 in its entirety to the Common Pleas Court of Knox County, with one exception. The Court **GRANTS IN PART** Defendants' motion for summary judgment as it relates to Plaintiff's claim of negligent infliction of emotional distress in her fifth cause of action. The Court **DISMISSES** the fifth cause of action of Plaintiff's Complaint

in 97–1255 **WITH PREJUDICE.** Finally, the Court **DENIES** the remaining portion of Defendants' motion to have requests for admission deemed admitted that the Court previously left undecided. Both consolidated cases are hereby **TERMINATED.**

**IT IS SO ORDERED.**