OPINION
{¶ 1} Plaintiff-appellant Olga Dunina, pro se, appeals a decision of the Montgomery County Court of Common Pleas, which sustained the motions for summary judgment of defendants-appellees LifeCare Hospital of Dayton (hereinafter "LifeCare") and Maxim Healthcare Services, Inc. and Aaron Zoftkie (hereinafter "Maxim") on March 25, 2005, and June 1, 2005, respectively. On May 26, 2005, the trial court sustained a motion for summary judgment filed by LifeCare employees Elizabeth Carico, Briana Brown, Carolyn Kendell, Bill Urshell, Ken D'Amico, and Pam Hollingshead (hereinafter "the Employees") as well. Dunina filed a notice of appeal with this Court on June 30, 2005.
 I {¶ 2} On March 29, 2002, LifeCare entered into a contractual agreement with Maxim wherein Maxim agreed to recruit and employ registered nurses. Pursuant to the contract, Maxim would provide "agency" nurses to staff LifeCare hospital facilities upon its request. An agency nurse is a nurse who is employed by a staffing company, such as Maxim, and is assigned to work at a facility such as LifeCare for specific shifts, as the need arises. Aff. of Pam Hollingshead, Jan. 24, 2005.
 {¶ 3} Dunina was an agency nurse employed by Maxim who was sent to work at LifeCare's treatment center at Sycamore Hospital in Dayton, Ohio. On November 16, 2002, LifeCare employees became aware that narcotics had been taken from the facility without permission during Dunina's nighttime nursing shift. After an investigation was conducted with respect to the disappearance of the narcotics, LifeCare contacted representatives at Maxim and requested that Dunina no longer be sent to work for LifeCare. Maxim informed Dunina of LifeCare's decision and offered her placement at other health care facilities not affiliated with LifeCare. Dunina refused any alternative placement. Instead, she insisted that she be reinstated at the LifeCare facility at Sycamore Hospital because she passed a polygraph test relating to the disappearance of the narcotics, and the Ohio State Pharmacy Board declined to file charges against her after investigating the incident. However, LifeCare refused to allow her to return to work at any LifeCare facility.
 {¶ 4} Dunina filed her complaint on November 18, 2004, against numerous parties, including Maxim, LifeCare, and certain individual LifeCare Employees in which she sought to recover damages that allegedly resulted from her dismissal from the LifeCare facility at Sycamore Hospital. In the complaint, Dunina alleged causes of action for breach of implied contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligent infliction of emotional distress, and intentional infliction of emotional distress. Maxim, LifeCare, and the Employees filed respective motions for summary judgment which were granted by the trial court, and Dunina's case was dismissed in its entirety. It is from this judgment that Dunina now appeals.
 II {¶ 5} Initially, LifeCare and Maxim argue that Dunina has failed to comply with the requirements of Rule 16 of the Ohio Rules of Appellate Procedure and that her appeal should, therefore, be dismissed. Specifically, LifeCare and Maxim assert that pursuant to App. R. 16(A)(3) (4), an appellate brief must contain a statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected, as well as a statement of the issues presented for review. While Dunina's brief does contain a page entitled "Statement of the Assignment of Errors," the remainder of her argument only loosely corresponds with her assignment of error. Moreover, LifeCare and Maxim point out that Dunina's brief fails to provide any supporting legal or factual citations as required by App. R. 16(A)(7).
 {¶ 6} Under App. R. 12(A)(2), an appellate court may refuse to consider her assigned error. The rules are applicable to all parties whether or not they proceed on a pro se basis. While we are mindful that such omissions authorize this court to either strike Dunina's brief or sua sponte dismiss her appeal for failure to comply with the Appellate Rule 16, in the interests of justice, we will review the merits of Dunina's claims.
 {¶ 7} Dunina also asserts that Maxim and LifeCare violated her constitutional rights to due process and equal protection under the Fourteenth Amendment. However, Dunina failed to include a cause of action based on any constitutional violation in her complaint. In her brief, Dunina does nothing more than merely assert that her constitutional rights were violated. At no point does she explain how either Maxim or LifeCare infringed upon her rights to due process and equal protection. A review of the record clearly indicates that Dunina has produced no evidence which demonstrates how she was deprived of any constitutional safeguards when she was dismissed by LifeCare for suspicion of stealing narcotics. Because Dunina did not state such a cause of action in her complaint or otherwise raise the matter in the trial court, she may not raise it for the first time on appeal.Adams v. K-Mart Corp. (February 5, 1999), Greene App. No. 98CA75, citing, Schaefer v. DeChant (1983), 11 Ohio App.3d 281,282-283, 464 N.E.2d 583. Thus, this issue is not properly before us and will not be addressed further.
 {¶ 8} Dunina's sole assignment of error is as follows:
 {¶ 9} "THE MONTGOMERY COUNTY COMMON PLEAS COURT ERRED WHEN IT GRANTED SAID APPELLEES WHOLE SALE CIV. R. 56 SUMMARY JUDGMENTS BECAUSE: * * *"
 {¶ 10} In reviewing Dunina's sole assignment, we look to her amended complaint filed on February 22, 2005, in order to determine the trial court's basis for sustaining LifeCare's and Maxim's motions for summary judgment. As previously stated, Dunina alleged causes of action for breach of implied contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligent infliction of emotional distress, and intentional infliction of emotional distress. For the following reasons, the judgment of the trial court will be affirmed.
 {¶ 11} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock StoweW-oodward Co. (1983),13 Ohio App.3d 7, 12, 467 N.E.2d 1378.
 {¶ 12} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 {¶ 13} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
 A. Breach of Implied Contract {¶ 14} In her first cause of action, Dunina contends that Maxim, LifeCare, and the Employees breached an implied contract when she was dismissed from Sycamore Hospital on suspicion of stealing narcotics. We recently addressed the issue of implied contracts in Shepard v. Griffin Services, Inc. (May 10, 2002), Montgomery App. No. 19032, 2002-Ohio-2283, wherein we stated the following:
 {¶ 15} "In Ohio, an employment relationship which has no fixed duration is considered at-will, meaning either party can terminate the relationship at any time, without cause. Henkel v.Educational Research Council (1976), 45 Ohio St.2d 249,344 N.E.2d 118. However, in the interest of justice, the supreme court has recognized exceptions to the at-will doctrine. Mers v.Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 103-104,483 N.E.2d 150. Under the first exception, the existence of an express or implied contract can overcome the employment-at-will presumption. Reasoner v. Bill Woeste Chevrolet, Inc. (1999),134 Ohio App.3d 196, 200, 730 N.E.2d 992. In order to imply a contract, `there must be specific evidence to show that the parties mutually assented to something other than at-will employment.' Id. Specifically, employee handbooks, company policy, and oral representations under some circumstances may contain such evidence. Kelly v. GeorgiaP-acific Corp. (1989),46 Ohio St.3d 134, 139, 545 N.E.2d 1244."
 {¶ 16} Evidence of the character of the employment, custom, the course of dealing between the parties, company policy, or other circumstances may transform an employment at-will agreement into an implied contract for a definite term. Mers, supra, ¶ 2 of the syllabus. However, unless the terms of the agreement or the circumstances manifest the parties' mutual intent to bind each other, the Ohio Supreme Court has evidenced a strong presumption favoring employment at-will. Henkel, supra at 254-255.
 {¶ 17} In her amended complaint, Dunina stated the following with respect to her claim for breach of implied contract:
 {¶ 18} "2. `Maxim' the resourcing and paying agency to plaintiff, and its agent Aaron Zoftkie and `LifeCare of Dayton' and its named agents for valuable financial consideration had a contract to resource RN's. `Maxim' and its said agent also implicitly contracted with Plaintiff as her agency to contract her out as a (sic) to `LifeCare Hospitals of Dayton' to work with and be supervised by LifeCare's named agents for valuable financial consideration Payable to Maxim."
 {¶ 19} "3. `Maxim' and their agents have breached their implied contracted duties by not tracking the drug theft allegation against plaintiff by `LifeCare Hospitals of Dayton' and LifeCare agents (Elizabeth Carico, Briana Brown, Bill Urshell, Pam Hollinger, Carolyn Kendell, and Ken D'Amico) throughout the administrative investigation. Said defendants individually and collectively abandoned and deserted Plaintiff as of November 18, 2002 and after December 11, 2002."
 {¶ 20} Based on the information contained in her complaint, Dunina does not even allege that she entered into a contract, either express or implied, with LifeCare or any of its employees. Maxim, on the other hand, expressly contracted with LifeCare to provide agency nurses to staff its various facilities as the need arose. Pursuant to the terms of the staffing agreement between Maxim and LifeCare, Maxim employed the nurses it provided to LifeCare. The staffing agreement states in pertinent part:
 {¶ 21} "Employer Obligations. MAXIM will follow its standard employment policies and procedures to verify that all Personnel meet applicable licensing requirements. MAXIM, or its subcontractor, if applicable, will maintain direct responsibility as employer for payment of wages and other compensation, and for any applicable mandatory withholdings and contributions, such as federal, state, and local income taxes, social security taxes, worker's compensation, and unemployment insurance."
 {¶ 22} In light of the above provision, it is clear that neither LifeCare nor any of its employees contracted with Dunina to provide her with employment. LifeCare did not pay Dunina's wages, benefits, or other compensation. No contractual relationship, implied or otherwise, existed between LifeCare and Dunina. LifeCare never offered Dunina employment, and pursuant to the terms of the contract it had with Maxim, LifeCare reserved the right to dismiss an agency nurse with or without cause. Thus, the trial court was correct in sustaining LifeCare's and the Employees' motions for summary judgment with respect to Dunina's claim for breach of implied contract.
 {¶ 23} Dunina also fails to demonstrate how her employment relationship with Maxim was anything other than at-will in nature. When she began her employment with Maxim, Dunina signed an acknowledgment form which states in pertinent part:
 {¶ 24} "I further acknowledge that no one other than the President of Maxim Healthcare can enter into an agreement for employment for a specified period of time, or make any agreement or representations to the contrary. Furthermore, I understand that any such agreement must be in writing and signed by the President of Maxim Healthcare. I understand that Maxim Healthcare may revise its policies or practices at any time without further notice; however no such revision will change the at-will nature of my employment."
 {¶ 25} The evidence clearly demonstrates that Dunina's employment at Maxim was at-will. Other than her bare assertions that an implied contract existed between her and Maxim, she provides us with no evidence that such a relationship existed or that her at-will status was ever modified so that Maxim had a duty to track the drug theft allegation. Dunina's employment at Maxim was terminable at the will of either party. She had no right to continued employment at Maxim nor continued placement as an agency nurse at LifeCare. Thus, the trial court did not err when it granted Maxim's motion for summary judgment with respect to Dunina's claim for breach of implied contract.
 B. Breach of the Duty of Good Faith and Fair Dealing {¶ 26} In the second count of her amended complaint, Dunina alleges that Maxim, LifeCare, and the Employees "owed Plaintiff (Dunina) a duty to act in good faith with respect to professional and legal obligation of dealing with plaintiff, including a diligent impartial investigation of the drug theft allegation against plaintiff and all other nurses on duty at that time according to a standard, and only to have denied plaintiff reinstatement when they could have articulated a good and just cause for the denial, which they did not, * * *." Dunina also claims that the appellees acted in bad faith when they failed to pursue her reinstatement after the drug theft investigation was concluded.
 {¶ 27} "Parties to a contract are bound toward one another by standards of good faith and fair dealing (internal citation omitted). A party cannot discharge his duty under a contract by the occurrence of an event which is the result of a breach of his own duty of good faith and fair dealing (internal citation omitted). As such, implied in every contract is a condition that neither party will act so as to defeat the other party's legitimate expectations under the contract." McLemore v.McLemore (Oct. 19, 1994), Montgomery App. No. 13802.
 {¶ 28} As previously discussed, there is no contract, express or implied, between LifeCare and Dunina that would impose a duty of good faith and fair dealing on LifeCare. Thus, no duty of good faith and fair dealing exists between Dunina and LifeCare, or any of its Employees, for that matter. Dunina's claim is, therefore, without merit as to LifeCare and its Employees.
 {¶ 29} With respect to Maxim, Dunina's status was that of an at-will employee. We recently held in Hapner v. Tuesday Morning,Inc. (Feb. 21, 2003), Montgomery App. No. 19395, 2003-Ohio-781, that the duty of good faith and fair dealing is not recognized in Ohio as a cause of action when it involves the discharge of an at-will employee, or, more generally between an employer and employee. See Vickers v. Wren Industries, Inc. (July 8, 2005), Montgomery App. No. Civ.A. 20914. Thus, Dunina's claim must fail as a matter of law, and the trial court was correct in granting Maxim and LifeCare summary judgment with respect to her cause of action for breach of the duty good faith and fair dealing.
 C. Breach of Fiduciary Duty {¶ 30} In the third count of her amended complaint, Dunina alleges that Maxim and LifeCare "breached their duties of trust, fair dealing, honesty, and duty of care by their failure to offer, recommend, and/or suggest help and support for plaintiff to have been re-instated with back pay after the December 11, 2002 administrative ruling * * *."
 {¶ 31} "A `fiduciary' has been defined as `a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.'"Strock v. Pressnell (1998), 38 Ohio St.3d 207, 216,527 N.E.2d 1235. A breach of fiduciary duty claim is essentially a negligence claim involving a higher standard of care in certain professional relationships. Id. The party asserting such a breach must establish the existence of a fiduciary duty, a breach of that duty, and an injury proximately resulting therefrom.Id. The fiduciary's role may be assumed by formal appointment, or it may arise de facto from a more informal relationship between the parties; for the de facto status to be recognized, however, both parties must understand under the circumstances that a special trust and confidence has been reposed in one by the other. Blon v. Bank One, Akron, N.A. (1988),35 Ohio St.3d 98, 519 N.E.2d 363.
 {¶ 32} It is clear from the record that no formal fiduciary relationship existed between the parties in the instant appeal. There is no evidence that defendant-appellees were obligated to act primarily for Dunina's benefit or that she placed a special trust in them as fiduciaries. Moreover, Dunina has failed to allege any facts that demonstrate that a de facto fiduciary relationship existed between herself and any of the defendant-appellees. Thus, the trial court did not err when it granted defendant-appellees' motions for summary judgment with respect to Dunina's claim for breach of fiduciary duty.
 D. Negligent and/or Intentional Infliction of Emotional Distress {¶ 33} In the fourth and final count of her amended complaint, Dunina alleges that "Maxim, LifeCare, and their said individual associated agents * * * have intentionally and/or negligently caused plaintiff a great deal of emotional distress by its negligent and intentional illegal indifferent acts to the good and valid evidence that plaintiff did not commit theft of drugs on November 16, 2002 at 03:07." Dunina also alleges that the "negligent and intentional callus [sic] disregard for the plaintiff's welfare and her economical need for re-instatement has caused great emotional distress, pain and suffering and caused other damages to her such as professionally, financially, socially and psychologically deprivations."
 {¶ 34} As we recently held in Vickers, supra, "Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context." Citing Heck v.Bd. of Trustees, Kenyon College (S.D.Ohio, 1998),12 F.Supp.2d 728, 747, citing Hanly v. Riverside Methodist Hosp. (1991),78 Ohio App.3d 73, 83; Tohline v. Central Trust Co. (1988),48 Ohio App.3d 280; Antalis v. Ohio Dept. of Commerce (1990),68 Ohio App.3d 650. Thus, defendant-appellees are entitled to summary judgment in their favor on Dunina's claim for negligent infliction of emotional distress.
 {¶ 35} To establish that a cause of action for intentional infliction of emotional distress is present, the conduct complained of must be "extreme and outrageous." Yeager v. LocalUnion 20 (1983), 6 Ohio St.3d 369, 374-375, 453 N.E.2d 666, 671. In an at-will employment situation, termination may be carried out with gross and reckless disregard of an employee's rights.Phung v. Waste Management, Inc. (1986), 23 Ohio St.3d 100,491 N.E.2d 1114. "A former employee may not recover damages from his previous employer and supervisor for the intentional infliction of serious emotional distress allegedly caused by the employee's discharge from his at-will employment." Foster v. McDevitt
(1986), 31 Ohio App.3d 237, 511 N.E.2d 403, at ¶ 1 of the syllabus; see also Bourekis v. Saidel Assoc. (June 2, 1994), Montgomery App. No. 14105 (holding that the termination of an at-will employee in itself cannot constitute the type of extreme, outrageous conduct necessary to establish a claim for intentional infliction of emotional distress). As we noted in Vickers,
supra, although the Ohio Supreme Court held that "an action predicated on intentional infliction of emotional distress brought by an at-will employee against his employer is not foreclosed merely because his discharge from employment was obtained in a lawful manner," it based its holding on the fact that the proximate cause of the emotional distress suffered by the employee in that case was not limited to the mere fact of his discharge. Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 47-49,570 N.E.2d 1076.
 {¶ 36} In the instant case, Dunina was an at-will employee of Maxim, and thus could be terminated with or without cause at any time, as long as state or federal law was not violated. Again, Dunina fails to adduce any material facts which would create a genuine issue so as to withstand summary judgment on her claim for intentional infliction of emotional distress. In deciding to terminate Dunina, Maxim has done nothing more than exercise its legal rights. Before terminating Dunina, Maxim offered her reassignment to another healthcare facility not affiliated with LifeCare. Rather than accept Maxim's offer, she refused reassignment and instituted the present action in attempt to regain her assignment at Sycamore Hospital. With respect to LifeCare's involvement in Dunina's termination, the healthcare provider merely acted upon its belief that Dunina had stolen narcotics and exercised its right to dismiss Dunina pursuant to the staffing agreement.
 {¶ 37} Defendant-appellees bear no liability to Dunina for any resultant emotional, physical, or financial distress regardless of whether they were aware that termination would cause Dunina harm. Additionally, the alleged harm suffered by Dunina is limited to that produced by her discharge. As a matter of law, Dunina may not recover from defendant-appellees for intentional infliction of emotional distress caused solely by her discharge from her at-will employment. Vickers, supra. Thus, the trial court did not err when it granted summary judgment on Dunina's claim for intentional infliction of emotional distress.
 {¶ 38} Dunina's assignment of error is overruled.
 III {¶ 39} Dunina's sole assignment of error having been overruled, the judgment of the trial court is affirmed.
Wolff, J. and Fain, J., concur.