DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common Pleas which granted the summary judgment motion of defendants-appellees, Dale A. Solze, M.D. and Eye Centers of Northwest Ohio, Inc., and thereby dismissed the action filed by plaintiffs-appellants, Sharon O. Meek and Sharon O. Meek, Executrix of the Estate of Charles R. Meek. From that judgment, appellants raise the following assignment of error:
 {¶ 2} "The Trial Court erred to the prejudice of the Plaintiffs-Appellants in Granting the Defendant's Motion for Summary Judgment."
 {¶ 3} The undisputed facts of this case are as follows. Appellants' decedent, Dr. Charles R. Meek, was an optometrist practicing in the Port Clinton, Ohio area for a number of years. Defendant-appellee, Dr. Dale A. Solze, is an ophthalmologist practicing in northwest Ohio through his corporation defendant-appellee, Eye Centers of Northwest Ohio ("Eye Centers"). Eye Centers was incorporated in 1974 and Dr. Solze has always been the sole shareholder of that corporation. Dr. Meek and Dr. Solze had known each other since 1957 when both attended the Ohio State University. Over the years, the two men had referred patients to each other and maintained a friendship. Between 1989 and 1990, Dr. Meek's business began to decline, due in part to his alcoholism. Dr. Meek subsequently approached Dr. Solze, told him his business was in trouble and asked for his help. Dr. Solze told Dr. Meek that he would help by setting up an Eye Centers office in Port Clinton, but Dr. Solze conditioned his help on three requirements: the office had to be relocated, Dr. Meek had to stop eating lunch at the Elks, and Dr. Solze wanted to protect his investment through life insurance policies on both Dr. Solze and Dr. Meek.
 {¶ 4} In 1992, Dr. Solze opened an Eye Centers in Port Clinton where Dr. Meek worked as an optometrist and Dr. Meek's wife, plaintiff-appellant Sharon Meek, worked as a receptionist and generally helped maintain the office. Dr. Solze and Dr. Meek did not, at that time, enter into a written employment contract. They did, however, purchase life insurance policies through Donald Dougherty, then a Prudential insurance agent. Dr. Solze's policy was issued by Prudential and named Dr. Meek as the beneficiary with a death benefit of $100,000. Dr. Meek's policy was issued by U.S. Financial Life Insurance Company, and named Dr. Solze as the beneficiary with a death benefit of $100,000. Dr. Meek's policy, however, was for a limited term of 10 years with an expiration date of December 3, 2002. The premiums for both policies were paid by Eye Centers.
 {¶ 5} In 1996, Dr. Meek approached Dr. Solze and asked to be included in a bonus or profit sharing program. As a result, Dr. Meek entered into a written "Contract for Services" with Eye Centers, which contract was signed by Dr. Solze as president of Eye Centers. The 1996 contract was entered into on November 19, 1996, and specified that it was for a term of two years unless terminated sooner as provided in Article 6 of the contract. Article 6 of the contract is titled "Termination of Agreement" and reads in relevant part as follows:
 {¶ 6} "6.01 Unless otherwise terminated as provided in this Agreement, this Agreement shall continue in force for a period of two (2) years and shall then terminate unless renewed in a writing executed by both parties.
 {¶ 7} "6.02 Notwithstanding any other provision of this Agreement, either party may terminate this Agreement at any time by giving sixty (60) days written notice to the other party.
 {¶ 8} " * * *
 {¶ 9} "6.06 Upon termination for any reason other than death, Doctor [Meek] shall be entitled to take with him all of his records and personal equipment which he has brought into the business. Company shall retain all of its records and equipment.
 {¶ 10} "6.07 In the event of the death of Doctor [Meek] or of Dale A. Solze, M.D. the sole shareholder of Company, it is agreed that each party shall maintain a life insurance policy in the amount of $100,000 upon the life of the other, which policy amount shall be paid to the spouse or other designated beneficiary as full payment for all supplies, records, and equipment in regards to the Port Clinton Office."
 {¶ 11} In 1998, as the expiration date of the 1996 contract approached, Dr. Meek and Eye Centers entered into another "Contract for Services," which was identical to the 1996 contract. In 2000, when the 1998 "Contract for Services" expired, the parties did not sign a new written contract but continued their employment relationship, with Dr. Meek's compensation and bonuses paid as provided in the 1998 contract.
 {¶ 12} In 2001, Dr. Meek's health began to decline, and in early 2002, he was hospitalized for problems associated with his alcoholism. On March 12, 2002, Dr. Solze sent Dr. Meek a letter terminating his employment. The letter reads in relevant part: "Pursuant to the provisions of the Contract between the Eye Centers of Northwest Ohio, Inc. and yourself, this letter is to advise you that Eye Centers is exercising its right to terminate your contract for services upon sixty (60) days notice." On March 31, 2002, Dr. Meek died. Subsequently, U.S. Financial Life Insurance Company paid the death benefit of $100,000 plus interest, to Dr. Solze under the terms of the policy on the life of Dr. Meek.
 {¶ 13} On July 25, 2003, Sharon Meek, individually and as the executrix of the estate of Charles Meek (collectively referred to herein as Meek), filed a complaint in the court below. Meek subsequently filed a first amended complaint that more specifically set forth her claims against Dr. Solze and Eye Centers for negligent infliction of emotional distress, breach of contract, entitlement to the insurance proceeds under the doctrine of constructive trust, punitive damages, and fraudulent misrepresentation. Meek also sought an itemized accounting of any bonuses to which Dr. Meek was entitled from July 1991 to the present.
 {¶ 14} Appellees filed a motion for summary judgment on all claims and Meek filed a responsive motion. A number of depositions and affidavits were filed in the proceeding below, and on October 13, 2005, the lower court issued a decision and order granting appellees summary judgment on all of Meek's claims except the claim for an accounting, which the court found was moot because appellees had provided the requested information. Meek now challenges the trial court's judgment on appeal. Meek does not challenge the trial court's ruling on her claim for an accounting.
 {¶ 15} Appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination.Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v.Burt (1996), 75 Ohio St.3d 280, 294. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 16} Count I of Meek's complaint asserted a claim for negligent infliction of emotional distress. Meek averred that the termination letter that Dr. Solze sent to Dr. Meek on March 12, 2002, while Dr. Meek was on his death bed and dying, caused her and Dr. Meek serious emotional distress and anguish.
 {¶ 17} The Supreme Court of Ohio has held that "recovery for negligent infliction of severe emotional distress has typically been limited to instances where the plaintiff has either witnessed or experienced a dangerous accident and/or was subjected to an actual physical peril."Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 163, citingHeiner v. Moretuzzo (1995), 73 Ohio St.3d 80, 85-87. Moreover, "Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context." Hanly v. RiversideMethodist Hosp. (1991), 78 Ohio App.3d 73, 83, citing Hatlestad v.Consol. Rail Corp. (1991), 75 Ohio App.3d 184; see, also, Dunina v.LifeCare Hospitals of Dayton, 2d Dist. No. 21142, 2006-Ohio-2824, andPowers v. Pinkerton, Inc. (Jan. 18, 2001), 8th Dist. No. 76333. Accordingly, the trial court did not err in granting appellees summary judgment on this claim.
 {¶ 18} Count II of Meek's complaint asserted a claim for breach of contract. Meek claims that under the terms of Dr. Meek's November 1, 1998, employment contract with Dr. Solze and Eye Centers, Sharon Meek was to be the beneficiary of the life insurance policy on Dr. Meek's life and that by retaining the benefits for himself, Dr. Solze breached the employment contract.
 {¶ 19} Initially it is noteworthy that the employment contract between the parties dated November 1, 1998, expired on November 1, 2000. After that date, the parties did not sign a new written contract. Nevertheless, it is undisputed that after the expiration of the 1998 contract, Dr. Meek continued to work for Dr. Solze and Eye Centers under the same terms and conditions of the 1998 contract. The general rule of contracts under such a situation is:
 {¶ 20} "Where a contract of employment for a definite time is made and the employee's services are continued after the expiration of the time, without objection, the inference is that the parties have assented to another contract for a term of the same length with the same salary and conditions of service, following the analogy of a similar rule in regard to leases." 1 Williston, Contracts, Rev.Ed. Section 90. See, also,Kelly v. Carthage Wheel Co. (1900), 62 Ohio St. 598.
 {¶ 21} Accordingly, the terms and conditions of the 1998 contract continued to define the parties' relationship at the time of Dr. Meek's death. The interpretation of a contract is an issue of law, not of fact, to be determined by the court. Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 313. Contracts are to be interpreted to achieve the intent of the parties. Skivolocki v. E. Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Additionally, "where the terms in an existing contract are clear and unambiguous, th[e] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, 246.
 {¶ 22} The employment contract at issue expressly states in paragraph 6.07: "In the event of the death of Doctor [Meek] or of Dale A. Solze, M.D. the sole shareholder of Company, it is agreed that each party shall maintain a life insurance policy in the amount of $100,000 upon the life of the other, which policy amount shall be paid to the spouse or otherdesignated beneficiary as full payment for all supplies, records, and equipment in regards to the Port Clinton Office." (Emphasis added.) There is nothing ambiguous about the contract. The insurance policies that Dr. Meek and Dr. Solze took out on each other's lives named the other as the beneficiary. The parol evidence that Meek submitted to the court below, in the form of depositions and affidavits, in an attempt to establish that Dr. Meek intended the insurance proceeds to go to his wife, cannot be considered in an effort to establish that the contract or insurance policy mean anything other than what they unambiguously state. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, syllabus.
 {¶ 23} Accordingly, Dr. Solze was not contractually obligated to pay the insurance proceeds to Meek and the lower court did not err in granting appellees summary judgment on Meek's claim for breach of contract.
 {¶ 24} In Count III of her complaint, Meek alleged that she was entitled to the insurance proceeds under the doctrine of constructive trust. In Ferguson v. Owens (1984), 9 Ohio St.3d 223, 225, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221, the Supreme Court of Ohio defined a constructive trust as : "'* * * [A] trust by operation of law which arises contrary to intention and invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice.'" Although a constructive trust is usually impressed when a party acquires property through fraud, it may also be invoked when property was acquired without fraud. Id. at 226. A constructive trust may not be impressed, however, simply because there has been a moral wrong or abuse of a business or other relationship; rather, it requires a showing of a wrongful acquisition or retention of property.Croston v. Croston (1969), 18 Ohio App.2d 159. "A constructive trust is, in the main, an appropriate remedy against unjust enrichment."Ferguson, supra at 226.
 {¶ 25} Meek claims that under the doctrine of constructive trust, Dr. Solze is obligated to pay her the $100,000 insurance proceeds because she, not Solze, is entitled to those benefits. The employment contracts and insurance contracts submitted into evidence, however, clearly demonstrate the intention of the parties to those contracts. That is, Dr. Meek and Dr. Solze intended to procure life insurance on each others lives "which policy amount shall be paid to the spouse or otherdesignated beneficiary." Dr. Meek then designated Dr. Solze as the beneficiary of his life insurance policy. It is noteworthy that Dr. Solze named Dr. Meek as the beneficiary of his life insurance policy. All of the applications for life insurance that Dr. Solze and Dr. Meek completed during the time of their professional association named the other as the beneficiary of the policy. This includes an application that Dr. Meek submitted approximately 18 months prior to the expiration of his policy with U.S. Financial Life Insurance Company and approximately six months before his death. Despite what Dr. Meek may have told his wife and children, from 1992 until his death, he consistently named Dr. Solze as the beneficiary of his insurance policy. As Dr. Solze testified, this was one of his demands for opening an Eye Centers office in Port Clinton. He put up the money for that operation and wanted to protect his investment. Meek has not submitted any evidence to contradict these facts or from which one could conclude that Dr. Solze was unjustly enriched by the insurance proceeds. Accordingly, the trial court did not err in granting appellees summary judgment on this claim.
 {¶ 26} In Count V of her complaint, Meek asserted that appellees fraudulently misrepresented the purpose and intent of the insurance policy and thereby induced Dr. Meek to enter into the employment contract, believing that the insurance proceeds would go to his wife upon his death.
 {¶ 27} "An action for fraudulent misrepresentation requires proof of (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." Brewer v. Brothers (1992), 82 Ohio App.3d 148, 153, citingBurr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, 73.
 {¶ 28} In support of their motion for summary judgment, appellees in the proceeding below submitted, in relevant part, the depositions of Dr. Solze and Sharon Meek. Dr. Solze testified that when he agreed to help Dr. Meek by opening an Eye Centers clinic in Port Clinton, he insisted on protecting his investment with a life insurance policy on Dr. Meek's life. To open the Eye Centers clinic, Dr. Solze needed to invest approximately $80,000. Dr. Solze testified that he and Dr. Meek discussed the need for the life insurance policy to help pay off the debt should Dr. Meek die. Similarly, Dr. Solze stated that the policy on his life, which named Dr. Meek as the beneficiary, was put in place so that if Dr. Solze died, Dr. Meek could buy the equipment and continue the practice. Mrs. Meek testified that she was not present during this discussion and did not know the details of Dr. Meek's business association with Dr. Solze. It was her belief that Dr. Meek and Dr. Solze went into partnership together. In contrast to appellees' evidence, Meek attempted to introduce evidence through the affidavits of her sons, Brad, Bryan and David Meek, and Donald Dougherty, that the proceeds of the insurance policy at issue were meant for her benefit. This of course raises the issue of the parol evidence rule.
 {¶ 29} In Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27-29, the Supreme Court of Ohio discussed at length the parol evidence rule and its application in cases asserting fraud:
 {¶ 30} "The parol evidence rule states that `absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4. Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction.Charles A. Barton, Inc. v. Durkee (1952), 158 Ohio St. 313, 324 * * *. `The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract.' Id., paragraph one of the syllabus.
 {¶ 31} "As summarized by the Supreme Court of California in In reGaines' Estate (1940), 15 Cal.2d 255, 264-265, 100 P.2d 1005, 1060:
 {¶ 32} "'The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing ( the "integration"), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.'
 {¶ 33} "The principal purpose of the parol evidence rule is to protect the integrity of written contracts. Ed Schory Sons, Inc. v. Soc. Natl.Bank (1996), 75 Ohio St.3d 433, 440 * * *. By prohibiting evidence of parol agreements, the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments. `It reflects and implements the legal preference, if not the talismanic legal primacy, historically given to writing. It effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document.' (Footnotes omitted.) 11 Williston on Contracts, supra, at 541-548, Section 33:1.
 {¶ 34} "Nevertheless, the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement. Drew v. Christopher Contr. Co., Inc.
(1942), 140 Ohio St. 1, * * * paragraph two of the syllabus.
 {¶ 35} "* * *
 {¶ 36} "However, the parol evidence rule may not be avoided `by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.' Marion Prod. Credit Assn. v.Cochran (1988), 40 Ohio St.3d 265, * * * paragraph three of the syllabus. See, also, Ed Schory Sons, Inc., supra,75 Ohio St.3d at 440, * * *. In other words, `[t]he Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit.' Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 1,7."
 {¶ 37} In the case before us, the only evidence that Meek has presented on her claim that appellees fraudulently represented the intent and purpose of the life insurance contract directly contradicts the express language used in that policy. As such, pursuant to the parol evidence rule, that evidence fails to support Meek's claim of fraudulent misrepresentation and the lower court did not err in granting appellees summary judgment on that claim.
 {¶ 38} Finally, in Count IV of her complaint, Meek alleged that "as a result of the Defendants' aforesaid willful and wanton misconduct and actions, the Plaintiffs are entitled to punitive damages and attorney fees."
 {¶ 39} R.C. 2315.21(C) permits an award of punitive damages in a tort action where the actions or omissions of a defendant demonstrate malice or aggravated or egregious fraud and a trier of fact has awarded actual compensatory damages as a result of those actions or omissions. Punitive damages are not recoverable for a breach of contract "unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." Stockdale v. Baba, 153 Ohio App.3d 712, 2003-Ohio-4366, ¶ 116. As the trial court properly granted appellees summary judgment on Meek's tort and breach of contract claims, so too did the court properly grant summary judgment on Count IV of Meek's complaint.
 {¶ 40} Accordingly, because the trial court properly granted appellees summary judgment on all of Meek's claims, the sole assignment of error is not well-taken.
 {¶ 41} On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
PETER M. HANDWORK, J., JUDGE; MARK L. PIETRYKOWSKI, J., JUDGE; ARLENE SINGER, P.J., JUDGE Concur.